UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWN BRYANT,

                                                                              DECISION and ORDER

                                    Plaintiff,

-vs-

                                                                              19-CV-6474 CJS

MONROE COUNTY, et al.,

                                    Defendants.
_____

INTRODUCTION

This is an action asserting constitutional violations under 42 U.S.C. § 1983 ("Section 1983") and state tort claims, arising from an incident in which Plaintiff alleges that he was arrested without probable cause, subjected to excessive force and maliciously prosecuted. Now before the Court is a motion (ECF No. 5) by Monroe County to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The application is granted.

BACKGROUND

The Complaint

For purposes of this Decision and Order the facts alleged in the Complaint are presumed to be true.[1] In pertinent part, those facts are as follows:

29. Plaintiff is an individual who resides in Worcester County, State of Massachusetts, who suffers from bipolar disorder.

---

[1] On a Rule 12(b)(6) motion "[a]ll factual allegations in the complaint are . . . presumed to be true. And all reasonable inferences are drawn in favor of the plaintiff. However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)

30. [Plaintiff contends that] Defendants arrested and prosecuted Plaintiff for crimes which Plaintiff did not commit and for which there was no probable cause to charge and prosecute Plaintiff.

31. On July 1, 2018, at or about 3:00 p.m., Plaintiff was searching for his father who owned a barber shop located at 2850 Dewey Avenue, Rochester, New York 14616.

32. Plaintiff did not have his telephone at that time and was unable to contact his father to find his whereabouts.

33. After Plaintiff saw that his father was not at his barber shop, Plaintiff went across the street to Children's Gallery Salon, located at 2855 Dewey Avenue, Rochester, New York 14616, to further search for his father.

34. Plaintiff lawfully entered Children's Gallery Salon, looked for his father, and left the salon when the employees requested him to leave.

35. After leaving the salon, Plaintiff was lawfully walking around a public street looking for his father when Defendants [Town of Greece Police Officers ("GPO")] GPO MURPHY and GPO CARMODY arrived on the scene.

36. Defendants GPO MURPHY and GPO CARMODY stopped Plaintiff, asked Plaintiff for his name and what he was doing, to which Plaintiff responded that he was looking for his father.

37. Plaintiff gave the officers his father's phone number and GPO CARMODY contacted Plaintiff's father.

38. GPO MURPHY and GPO CARMODY offered to drive Plaintiff to his father's location, and told Plaintiff to turn around because he had to be patted down before getting in the patrol car.

39. However, rather than patting Plaintiff down, GPO MURPHY and GPO CARMODY, without any legal basis and unbeknownst to Plaintiff, proceeded to handcuff Plaintiff on his right wrist despite the fact that Plaintiff had not committed any crime and without informing Plaintiff what he was being handcuffed for.

40. Plaintiff was surprised by suddenly being handcuffed without warning and pulled away from GPO MURPHY and GPO CARMODY to ask why he was being arrested instead of being taken to his father.

41. Rather than telling Plaintiff the reason for the arrest, GPO MURPHY and/or GPO CARMODY continued their attempts to arrest Plaintiff despite having no probable cause [to believe] that any crime had occurred.

42. Plaintiff then continued to ask why he was being arrested at which point GPO MURPHY and/or GPO CARMODY proceeded to punch Plaintiff in the face.

43. GPO MURPHY and/or GPO CARMODY continued to punch Plaintiff in the face multiple times before Plaintiff went down to the ground.

44. While Plaintiff was on the ground, at least six (6) more officers arrived on the scene, and continued to strike Plaintiff while he was on the pavement.

45. While Plaintiff was down on the ground, GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, [City of Rochester Police Officer ("RPO")] RPO DEMARCO, RPO BOSKAT, RPO DOES and/or [New York State Police ("NYSPD")] NYSPD DOES continued to assault Plaintiff about his head and body, and forcefully held Plaintiff down on the scorching hot pavement, despite the fact that Plaintiff was already subdued and handcuffed.

46. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES tased Plaintiff several times while Plaintiff was on the ground, without any legal basis to do so, and after Plaintiff was already subdued and handcuffed.

47. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES continued to assault and again tase Plaintiff even though he

was handcuffed and fully subdued on the pavement for no legitimate purpose.

48. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES continued to press Plaintiff's skin against the scorching hot pavement, after Plaintiff was handcuffed and subdued, for approximately twenty (20) minutes, despite Plaintiff's pleas that his skin was being burnt.

49. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES continued the use of physical force against Plaintiff after Plaintiff was handcuffed.

50. July 1, 2018 was an especially hot day, with temperatures reaching up to 93 degrees Fahrenheit, and the pavement was burning hot at the time Plaintiff was being pressed against the pavement.

51. While being held down by the aforementioned officers on the pavement, Plaintiff screamed multiple times that he was burning, because his arms were in direct contact with the pavement, to no avail.

52. While being held down by the aforementioned officers on the pavement, Plaintiff screamed multiple times that he could not breath, to no avail.

53. Despite Plaintiff's pleas, the aforementioned officers continued to hold Plaintiff down on the pavement, and continued to assault Plaintiff about his head and body.

54. Plaintiff was forcefully held down on the burning pavement for approximately twenty (20) minutes causing severe injuries to his body as a direct result of same, despite his multiple pleas to the aforementioned officers that his skin was burning.

55. As a result of Defendants' actions, Plaintiff suffered third-degree burns on both of his arms.

56. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, SGT POTTER, DET BEER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES witnessed the excessive force, but failed to intervene, despite knowing that such action was unlawful.

57. Plaintiff was then taken to Rochester General Hospital, where he stayed for approximately twelve (12) hours, two (2) hours out of which Plaintiff was strapped down to a gurney.

58. After being discharged from Rochester General Hospital, Defendants transported Plaintiff to the police station, where he was booked and sent to the county jail.

59. On or about July 1, 2018, DET BEER signed and filed a Felony Complaint charging Plaintiff with crimes that he did not commit in order to cover up their unlawful assault on Plaintiff earlier in the day.

60. On or about July 1, 2018, GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES witnessed DET BEER sign and file a Felony Complaint charging Plaintiff with crimes that he did not commit, but failed to intervene, despite knowing that such action was unlawful.

61. Plaintiff spent approximately six (6) hours in the county jail before he was able to make bail.

62. By the time Plaintiff was bailed out of the county jail, the burns on Plaintiff's arms had become infected.

63. Because of the burns to his arms, Plaintiff had to be readmitted to the hospital and receive skin grafting on both of his arms, from his forearms all the way to the shoulders.

64. Plaintiff had to receive additional plastic surgery on both of his arms due to the scars that were left behind from the burns and the skin grafting procedure due to the excessive force and callous indifference of Defendants.

> 65. [Plaintiff contends that] Defendants possessed no legal justification for physically engaging Plaintiff or for arresting Plaintiff as no crime had occurred.
>
> 66. During Defendants' use of physical force on Plaintiff's body, Plaintiff was physically injured, disabled, and permanently scarred.
>
> 67. Pursuant to the New York State General Municipal Law, Plaintiff served a Notice of Claim upon ROCHESTER, GREECE, and the State of New York, within the 90-day statutory period, giving Notice of these claims to the extent required by Law.
>
> 68. Pursuant to Section 50-h of the New York State General Municipal Law, Plaintiff appeared for a hearing that was conducted on behalf of Defendant GREECE.
>
> 69. Over thirty (30) days has since expired without GREECE remedying, settling, or adjusting this claim.

Compl. (ECF No. 1) at ¶ ¶ 29–69.

The only plausible reference to Monroe County in the Complaint are the allegations concerning Plaintiff spending six hours at the County Jail before being released on bail. As noted above, Plaintiff was taken to the County Jail after receiving emergency medical treatment at Rochester General Hospital over a period of twelve hours. The Complaint does not allege that anything happened during the subsequent six hours that Plaintiff spent at the County Jail, except that Plaintiff's wounds became infected. *See*, Compl. at ¶ ¶ 61–62 ("Plaintiff spent approximately six (6) hours in the county jail before he was able to make bail. By the time Plaintiff was bailed out of the county jail, the burns on Plaintiff's arms had be

come infected.").

Nevertheless, the Complaint purports to assert seven (7) causes of action against Monroe County: 1) Section 1983 claim for excessive force; 2) Section 1983 claim for

failure to supervise; 3) Section 1983 *Monell* claim; 4) Section 1983 "substantive due process" claim; 5) Section 1983 "procedural due process claim"; 6) state tort claim for assault and battery; and 7) state tort claim for negligent hiring/supervision/retention.

Monroe County's Motion to Dismiss

On August 7, 2019, Monroe County filed a motion to dismiss the Complaint (ECF No. 5). Monroe County indicates that, as noted above, the Complaint purports to state seven (7) causes of action against the County: 1) Section 1983 claim for excessive force; 2) Section 1983 claim for failure to supervise; 3) Section *1983* Monell claim; 4) Section 1983 "substantive due process" claim; 5) Section 1983 "procedural due process claim"; 6) state tort claim for assault and battery; and 7) state tort claim for negligent hiring/supervision/retention.

However, Monroe County contends that the Complaint fails to state a claim against the County since none of the individual defendants who arrested Plaintiff were employed by the County. The County further maintains that although Plaintiff alleges he was prosecuted by "the City of Rochester District Attorney's Office," no such entity exists. Indeed, the County asserts that, "[i]t is a mystery why Plaintiff named the County as a Defendant in this action[.]"[2]

Plaintiff opposes (ECF No. 29) the County's Motion and contends that he has pled involvement by County Employees in the alleged constitutional violations. In particular, Plaintiff contends that he has stated a claim against "John Doe" defendants at the Monroe County Jail, where he was kept for six hours before being released on bail, since the wounds that he sustained during the arrest became infected during that time. Plaintiff

---

[2] ECF No. 5-2 at p. 1.

further contends that he has stated a state claim (Seventh Cause of Action) against the County itself for "negligent training, retention and supervision."[3]

Monroe County filed a reply (ECF No. 31) in which it reiterates that no county employee was involved in Plaintiff's arrest. Additionally, the County asserts that it can have no liability for imprisoning Plaintiff for six hours, since the County Jail is required by law to accept arrestees without inquiring into whether their arrests were lawful, citing New York Correction Law § 500-c. The County further indicates that any individual jail employees were entitled to rely on the arresting officers' claim of probable cause. ("[T]he County's Corrections Officers had probable cause – justifiable reliance on the arresting officers' claim of probable cause for the arrest.").

DISCUSSION

<u>Motion Under Fed. R. Civ. P. 12(b)(6)</u>

Monroe County seeks dismissal under Rule 12(b)(6). The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

---

[3] Plaintiff contends that Monroe County would have respondeat superior liability on this state tort claim since any tortious conduct committed by jail staff would have been within the scope of the employee's employment.

> conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

In cases such as this that involve multiple defendants, a complaint must give each defendant fair notice of the claims being asserted against that defendant, and cannot simply lump all defendants together in a claim without providing a factual basis to

distinguish the defendants' conduct. *See, Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("Although Fed.R.Civ.P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.  By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy this minimum standard[.]") (citations and internal quotation marks omitted).

### Plaintiff Has Abandoned All Claims Against Monroe County Except Those Pertaining to His Confinement in the Jail

Monroe County has moved to dismiss the entire Complaint for failure to state an actionable claim.  In his response to Monroe County's motion to dismiss, Plaintiff baldly asserts that he "has properly pled all of his causes of action against County Defendant."[4] However, Plaintiff does not address most of the County's specific arguments, and instead focuses solely on an alleged claim that is not even spelled out in the Complaint, namely, that employees of the County Jail somehow harmed Plaintiff during the six hours that he spent at the jail before being released on bail, and that the County is liable for such actions.  On this point, Plaintiff states:

> While Plaintiff cannot name a specific employee of County Defendant who was responsible for his injuries suffered, it is clearly stated that he was *unlawfully imprisoned* in the County jail, which resulted in at least part of his injuries.

ECF No. 29 at p. 4. (emphasis added).[5]   Plaintiff otherwise offers no argument in

---

[4] ECF No. 29, Table of Contents.
[5] Plaintiff indicates that he intends to amend the Complaint to add John Doe County Defendants. *See*, Pl. Mem. of Law (ECF No. 29) at p. 4 ("Plaintiff respectfully requests that the Court permit Plaintiff to amend the Complaint to add County Employees John and Jane Does as Defendants, who will be properly identified after discovery.").

opposition to the County's motion.[6]

"A district court may, and generally will, deem a claim abandoned when a plaintiff [represented by counsel] fails to respond to a defendant's arguments that the claim should be dismissed." *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (collecting cases, citation and internal quotation marks omitted); *see also, Rugg v. City of New York*, No. 18 CIV. 9762 (LAP), 2019 WL 3242493, at *7 (S.D.N.Y. July 8, 2019) ("Plaintiff does not address his fifth and sixth causes of action in his response letter to the City's motion to dismiss, therefore the State and City hostile work environment claims are deemed abandoned.").

Accordingly, the Court finds that Plaintiff has abandoned all claims against Monroe County except a claim involving his alleged unlawful confinement at the County Jail for six hours, during which his arm wounds allegedly became infected.[7]

<u>The Complaint Fails to State an Actionable Claim Concerning Plaintiff's Confinement at the County Jail</u>

Having thus narrowed the scope of Plaintiff's claim against the County, the Court further finds that the Complaint fails to state a claim involving Plaintiff's confinement at

---

[6] Plaintiff states that, "County Defendant relies primarily on the argument that Plaintiff has not identified a County Employee responsible for the actions." The only such employees that Plaintiff identifies, however, are unnamed, non-specific employees of the jail who would have had custody of him during the six hours that he spent in jail. Plaintiff's response also includes a seemingly out-of-place statement that, "The Complaint adequately pleads Federal and State law causes of action against Moving Defendants based on their unreasonable and excessive force used against Plaintiff in violation of his constitutional rights." ECF No. 29 at p. 3. However, neither the Complaint nor Plaintiff's response alleges that any County employee used force against Plaintiff.
[7] The abandoned claims appear to lack merit in any event. For example, the Complaint purports to state seven causes of action against all defendants, including the County, which primarily involve the alleged arrest without probable cause, the alleged use of excessive force and the alleged malicious prosecution. The Complaint contains numerous bald allegations that County-employed police officers were involved in those activities. *See, e.g.,* Compl. at ¶ ¶ 81–82. However, those allegations are not plausible since there is no factual support for the contention that any officer involved in Plaintiff's arrest, or in the use of force, was employed by the County.

the jail.  In that regard, Plaintiff's response can be understood as referencing two types of claim:  A claim that jail staff unlawfully confined Plaintiff, and a claim that jail employees were somehow responsible for Plaintiff's wounds becoming infected during the six hours that he spent in the jail.  To the extent Plaintiff is asserting the latter type of claim, it is clearly not plausibly pleaded.  In that regard, the Complaint expressly alleges that Plaintiff was taken to jail only after receiving medical treatment at Rochester General Hospital over a period of twelve hours.  There is no allegation that Plaintiff required additional medical treatment that was denied by jail staff, or that he requested such treatment.  Moreover, the bald contention that Plaintiff's injuries somehow became "infected" during those six hours, despite him having just received medical treatment at the hospital, is implausible rather than plausible, and does not suggest malfeasance by jail staff in any event.  Consequently, insofar as Plaintiff's claim against the County is based on some type of alleged denial of medical care at the jail, it fails to plausibly allege a claim against any county employee and also fails to allege *Monell* liability[8] against the County.

This leaves only the claim that the County unlawfully imprisoned Plaintiff for six hours while he was attempting to post bail.  The County indicates that such confinement was privileged and lawful pursuant to New York Correction Law § 500-c.  The Court observes preliminarily that the County first raises this argument in its reply brief, and that the Court routinely declines to consider arguments raised in that manner.  However, the instant case is an exception, since Plaintiff only articulated his theory of liability against

---

[8] To establish municipal or *Monell* liability under § 1983 relating to a constitutional violation committed by a municipal employee in the course of his employment, "a plaintiff must establish that action pursuant to official municipal policy caused his injury." *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d Cir. 2018) (citation and internal quotation marks omitted).

the County in his response to the County's motion to dismiss. As noted earlier, this theory is not spelled out in the Complaint, and frankly appears to have been raised belatedly in response to the motion to dismiss. Consequently, the County did not have an opportunity to address the theory sooner. Accordingly, the Court will consider the County's argument.

Having done so, the Court agrees with the County that the Complaint fails to state any actionable federal or state claim based on the County Jail's alleged unlawful confinement of Plaintiff for six hours while he was attempting to post bail. On this point, Plaintiff's claim assumes that the Sheriff, or his deputies working at the jail, had the authority to release him during those six hours. However, that assumption is incorrect. In a case presenting somewhat similar facts, another district judge in this Circuit held that the plaintiff's detention at the county jail was justified since the county and county sheriff had no authority to release the plaintiff, who had been brought to the jail following his arrest by another police agency:

> Neither the Sheriff nor any of his subordinates are alleged to have effected the arrest or were even present at the scene. Rather, Plaintiff alleges that he was arrested by the Syracuse PD. The only allegations regarding the County Defendants are that Plaintiff was initially detained at the County Justice Center and, when he could not post bail, he was held there for an additional six days. As the County Defendants correctly assert, at no time during the alleged six days that Plaintiff was detained because of his inability to post bail could the County and/or Sheriff have released Plaintiff. Rather, they were required by law to detain Plaintiff until a court of competent jurisdiction ordered his release. As such, justification existed for the for the County Defendants' continued detention of Plaintiff. *See Caidor v. M & T Bank*, No. 5:05–CV–297, 2006 WL 839547, *5 n. 13 (N.D.N.Y. Mar. 27, 2006) (finding that the county defendants had justification for the continued detention of the plaintiff after his arrest by Syracuse police

officers since there was no judicial order directing his release) (citing N.Y. Corr. Law § 500–c(4), (6)).[9]

*Maddox v. Fowler*, No. 5:14-CV-01068 MAD, 2015 WL 4366222, at *9 (N.D.N.Y. July 16, 2015) (D'Agostino, J.); *see also, Jones v. McMahon*, No. 5:98-CV-374 FJS/GHL, 2005 WL 928667, at *5 (N.D.N.Y. Mar. 28, 2005) ("[I]nsofar as Plaintiffs claim that Defendant [Sheriff] Walsh committed these torts by failing to release them, his detention of Plaintiffs following State Defendants' arrests of them was privileged. *See* N.Y. Correct. Law § 500-c(4), (6)."), *amended sub nom. Jones v. Parmley*, No. 5:98-CV-374 FJS/GHL, 2005 WL 928666 (N.D.N.Y. Apr. 20, 2005), *and aff'd in part, dismissed in part sub nom. Jones v. Parmley*, 465 F.3d 46 (2d Cir. 2006). The Court agrees with that analysis.

In addition to that, the Complaint does not plausibly allege that any county employee had any reason to know that Plaintiff had allegedly been arrested without probable cause. Consequently, even assuming *arguendo* that county employees had the legal power to release Plaintiff from the jail, which they did not, they would have had no reason to do so.

For these various reasons the Complaint fails to state a claim against Monroe County.

---

[9] *See*, *Caidor v. M&T Bank*, 2006 WL 839547 at *5 ("[L]iberally construed, Plaintiff's complaint alleges that County Defendants are responsible for his continued detention after his allegedly false arrest. However, under New York law, County Defendants could not lawfully release Plaintiff without judicial authority. *See* N.Y. Correct. Law § 500-c(4), (6) (McKinney 2003). Therefore, the Court finds and concludes that justification existed for County Defendants' continued detention of Plaintiff. Accordingly, the Court grants County Defendants' motion to dismiss Plaintiff's Fourth Amendment claim for false arrest against them.").

<u>Plaintiff's Alternative Request to Amend is Denied</u>

Plaintiff's opposition contains the following statement: "In the event that this Honorable Court decides to dismiss the Complaint, in whole or in part, Plaintiff also respectfully requests the opportunity to replead pursuant to FRCP 15(a)(2)."[10]  Although leave to amend should be freely granted in general, Plaintiff has not submitted a proposed amended pleading or otherwise complied with Rule 15(a)-(b) of the Local Rules of Civil Procedure.  Nor, in any event, do the Complaint or Plaintiff's response give any indication that Plaintiff can state a plausible claim against Monroe County.  Consequently, Plaintiff's request to amend is denied.

## CONCLUSION

Monroe County's motion to dismiss (ECF No. 5) is granted for the reasons stated above.  The Clerk of the Court is directed to terminate Monroe County as a party to this action.

SO ORDERED.

Dated: Rochester, New York
       January 3, 2022

ENTER:

*[signature: Charles J. Siragusa]*
CHARLES J. SIRAGUSA
United States District Judge

---

[10] ECF No. 29 at p. 5.