UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWN BRYANT,

                                                                                     DECISION and ORDER

                                      Plaintiff,

-vs-

                                                                                   19-CV-6474 CJS

MONROE COUNTY, et al.,

                                     Defendants.
_____

INTRODUCTION

      This is an action asserting constitutional violations under 42 U.S.C. § 1983 ("Section 1983")[1] and state tort claims, arising from an incident in which Plaintiff alleges that he was arrested without probable cause, subjected to excessive force and falsely prosecuted. Now before the Court is a motion (ECF No. 6) by Town of Greece, Town of Greece Police Department, Greece Police Officer ("GPO") D. Murphy, GPO Patrick Carmody, GPO Matthew Hewgler, GPO K. Smith, Greece Police Detective K. Beer, Greece Police Sergeant A. Potter, GPO David D'Aurelio, GPO V. Cutt, GPO J. Reeder and GPO John/Jane Does #1-10 (Collectively "Greece Defendants") to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The application is granted in part and denied in part.

BACKGROUND

<u>The Complaint</u>

      For purposes of this Decision and Order the facts alleged in the Complaint are presumed to be true.[2] In pertinent part, those facts are as follows:

---

[1] Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09BCVB00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.
[2] On a Rule 12(b)(6) motion "[a]ll factual allegations in the complaint are . . . presumed to be true. And all reasonable inferences are drawn in favor of the plaintiff. However, conclusory allegations or legal

29. Plaintiff is an individual who resides in Worcester County, State of Massachusetts, who suffers from bipolar disorder.

30. [Plaintiff contends that] Defendants arrested and prosecuted Plaintiff for crimes which Plaintiff did not commit and for which there was no probable cause to charge and prosecute Plaintiff.

31. On July 1, 2018, at or about 3:00 p.m., Plaintiff was searching for his father who owned a barber shop located at 2850 Dewey Avenue, Rochester, New York 14616.

32. Plaintiff did not have his telephone at that time and was unable to contact his father to find his whereabouts.

33. After Plaintiff saw that his father was not at his barber shop, Plaintiff went across the street to Children's Gallery Salon, located at 2855 Dewey Avenue, Rochester, New York 14616, to further search for his father.

34. Plaintiff lawfully entered Children's Gallery Salon, looked for his father, and left the salon when the employees requested him to leave.

35. After leaving the salon, Plaintiff was lawfully walking around a public street looking for his father when Defendants GPO MURPHY and GPO CARMODY arrived on the scene.

36. Defendants GPO MURPHY and GPO CARMODY stopped Plaintiff, asked Plaintiff for his name and what he was doing, to which Plaintiff responded that he was looking for his father.

37. Plaintiff gave the officers his father's phone number and GPO CARMODY contacted Plaintiff's father.

38. GPO MURPHY and GPO CARMODY offered to drive Plaintiff to his father's location, and told Plaintiff to turn around because he had to be patted down before getting in the patrol car.

39. However, rather than patting Plaintiff down, GPO MURPHY and GPO CARMODY, without any legal basis and unbeknownst to Plaintiff, proceeded to handcuff Plaintiff on his right wrist despite the fact that Plaintiff had not

---

conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)

committed any crime and without informing Plaintiff what he was being handcuffed for.

40. Plaintiff was surprised by suddenly being handcuffed without warning and pulled away from GPO MURPHY and GPO CARMODY to ask why he was being arrested instead of being taken to his father.

41. Rather than telling Plaintiff the reason for the arrest, GPO MURPHY and/or GPO CARMODY continued their attempts to arrest Plaintiff despite having no probable cause [to believe] that any crime had occurred.

42. Plaintiff then continued to ask why he was being arrested at which point GPO MURPHY and/or GPO CARMODY proceeded to punch Plaintiff in the face.

43. GPO MURPHY and/or GPO CARMODY continued to punch Plaintiff in the face multiple times before Plaintiff went down to the ground.

44. While Plaintiff was on the ground, at least six (6) more officers arrived on the scene, and continued to strike Plaintiff while he was on the pavement.

45. While Plaintiff was down on the ground, GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, [City of Rochester Police Officer ("RPO")] RPO DEMARCO, RPO BOSKAT, RPO DOES and/or [New York State Police ("NYSPD")] NYSPD DOES continued to assault Plaintiff about his head and body, and forcefully held Plaintiff down on the scorching hot pavement, despite the fact that Plaintiff was already subdued and handcuffed.

46. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES tased Plaintiff several times while Plaintiff was on the ground, without any legal basis to do so, and after Plaintiff was already subdued and handcuffed.

47. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES continued to assault and again tase Plaintiff even though he was handcuffed and fully subdued on the pavement for no legitimate purpose.

48. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES continued to press Plaintiff's skin against the scorching hot pavement, after Plaintiff was handcuffed and subdued, for approximately twenty (20) minutes, despite Plaintiff's pleas that his skin was being burnt.

49. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES continued the use of physical force against Plaintiff after Plaintiff was handcuffed.

50. July 1, 2018 was an especially hot day, with temperatures reaching up to 093 degrees Fahrenheit, and the pavement was burning hot at the time Plaintiff was being pressed against the pavement.

51. While being held down by the aforementioned officers on the pavement, Plaintiff screamed multiple times that he was burning, because his arms were in direct contact with the pavement, to no avail.

52. While being held down by the aforementioned officers on the pavement, Plaintiff screamed multiple times that he could not breath, to no avail.

53. Despite Plaintiff's pleas, the aforementioned officers continued to hold Plaintiff down on the pavement, and continued to assault Plaintiff about his head and body.

54. Plaintiff was forcefully held down on the burning pavement for approximately twenty (20) minutes causing severe injuries to his body as a direct result of same, despite his multiple pleas to the aforementioned officers that his skin was burning.

55. As a result of Defendants' actions, Plaintiff suffered third-degree burns on both of his arms.

56. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, SGT POTTER, DET BEER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES witnessed the excessive force, but failed to intervene, despite knowing that such action was unlawful.

57. Plaintiff was then taken to Rochester General Hospital, where he stayed for approximately twelve (12) hours, two (2) hours out of which Plaintiff was strapped down to a gurney.

58. After being discharged from Rochester General Hospital, Defendants transported Plaintiff to the police station, where he was booked and sent to the county jail.

59. On or about July 1, 2018, DET BEER signed and filed a Felony Complaint charging Plaintiff with crimes that he did not commit in order to cover up their unlawful assault on Plaintiff earlier in the day.

60. On or about July 1, 2018, GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES witnessed DET BEER sign and file a Felony Complaint charging Plaintiff with crimes that he did not commit, but failed to intervene, despite knowing that such action was unlawful.

61. Plaintiff spent approximately six (6) hours in the county jail before he was able to make bail.

62. By the time Plaintiff was bailed out of the county jail, the burns on Plaintiff's arms had become infected.

63. Because of the burns to his arms, Plaintiff had to be readmitted to the hospital and receive skin grafting on both of his arms, from his forearms all the way to the shoulders.

64. Plaintiff had to receive additional plastic surgery on both of his arms due to the scars that were left behind from the burns and the skin grafting procedure due to the excessive force and callous indifference of Defendants.

65. [Plaintiff contends that] Defendants possessed no legal justification for physically engaging Plaintiff or for arresting Plaintiff as no crime had occurred.

66. During Defendants' use of physical force on Plaintiff's body, Plaintiff was physically injured, disabled, and permanently scarred.

67. Pursuant to the New York State General Municipal Law, Plaintiff served a Notice of Claim upon ROCHESTER, GREECE, and the State of New York,

> within the 90-day statutory period, giving Notice of these claims to the extent required by Law.
>
> 68. Pursuant to Section 50-h of the New York State General Municipal Law, Plaintiff appeared for a hearing that was conducted on behalf of Defendant GREECE.
>
> 69. Over thirty (30) days has since expired without GREECE remedying, settling, or adjusting this claim.

Compl. (ECF No. 1) at ¶ ¶ 29–69.

The Complaint alleges that Defendants used excessive force while arresting Plaintiff without probable cause, and then filed false criminal charges against him to cover up their wrongdoing. More specifically, the Complaint purports to assert seven (7) causes of action against Greece Defendants: 1) Section 1983 claim for excessive force against all Greece Defendants; 2) Section 1983 claim for failure to supervise against Town of Greece; 3) Section 1983 *Monell* claim against Town of Greece; 4) Section 1983 "substantive due process" claim (based on unjustified arrest and filing of false criminal charges) against all Greece Defendants; 5) Section 1983 "procedural due process claim" (based on denial of procedural right to education) against all Greece Defendants; 6) "pendent" state tort claim for assault and battery against all Greece Defendants; and 7) "pendent" state tort claim for negligent hiring/supervision/retention against Town of Greece. The Complaint purports to sue the individual Greece Defendants in their individual and official capacities.

Greece Defendants' Motion to Dismiss

On August 8, 2019, Greece Defendants filed the subject motion to dismiss the Complaint (ECF No. 6). As a preliminary matter, Greece Defendants contend that the Town of Greece Police Department should be dismissed from the action since it is not an entity that can be sued. Additionally, Greece Defendants seek dismissal of the Second,

Third, Fourth and Fifth Causes of action, contending that they contain only conclusory, non-plausible allegations. More specifically on that point, Greece Defendants raise the following arguments: 1) the Second and Third Causes of Action fail to state plausible *Monell* or failure to train/supervise claims against Town of Greece, including any individual defendant sued in an official capacity; and 2) the Fourth and Fifth Causes of Action (alleging a substantive due process claim and a procedural due process claim, respectively) "also fail to set forth a basis for *Monell* liability."[3] In sum, Greece Defendants' motion to dismiss the Second, Third, Fourth and Fifth Causes of Action is based entirely on Plaintiff's alleged failure to plead plausible *Monell* claims against Town of Greece.[4] Greece Defendants' motion does not allege or attempt to show that any cause of action is insufficiently pled as against any Greece Defendant sued in his individual capacity, even though Greece Defendants' motion purports to seek dismissal of those causes of action as against all Greece Defendants, including the individual defendants.[5]

On October 4, 2019, Plaintiff filed a response (ECF No. 30) to Greece Defendants' motion. Preliminarily, Plaintiff notes the limited scope of Greece Defendants' motion by stating:

> In moving to dismiss the Complaint, Moving Defendants rely primarily on the allegation that Plaintiff has not identified [a] specific custom, policy, and practice of Town of Greece that resulted in Plaintiff's injuries. To be clear, Moving Defendants argue that Plaintiff's Second, Third, Fourth and Fifth Causes of Action must be dismissed as against Defendant Town of Greece *only*.

---

[3] ECF No. 6-2 at p. 10 ("Mr. Bryant's § 1983 claims against the Greece Defendants seeking *Monell* liability based upon false arrest and malicious prosecution must be dismissed.").
[4] *See*, ECF No. 6-2 at pp.6–11; *see also, id*. at p. 3 ("*We assert herein that Mr. Bryant's Second, Third, Fourth and Fifth Claims are based upon conclusory allegations of a Town of Greece policy* to permit its police officers, in concern with law enforcement personnel of other police agencies and prosecutors, to engage in excessive force, false arrest and post-arret cover-up of such misconduct.") (emphasis added).
[5] *See*, ECF No. 6-2 at pp. 1, 11.

ECF No. 30 at p. 1 (emphasis added).  As indicated above, the Court agrees with that assessment.  Plaintiff next argues that he cannot be more specific about Town of Greece's alleged municipal policies or practices until he obtains discovery.  Plaintiff insists, however, that he has already plausibly pleaded that Town of Greece's alleged policy of automatically indemnifying police officers sued in civil actions encourages officers to violate citizens' civil rights, which is sufficient to support his *Monell* claims.  Plaintiff maintains, therefore, that Greece Defendants' motion should be denied in its entirety, though he alternatively asserts that he can amend the Complaint to address any pleading deficiencies.  Lastly, Plaintiff agrees that Town of Greece Police Department should be dismissed from the action since it is not a legal entity separate from Town of Greece.

Greece Defendants did not file a reply.

## DISCUSSION

Motion Under Fed. R. Civ. P. 12(b)(6)

Greece Defendants seek dismissal under Rule 12(b)(6).  The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) [("*Iqbal*")].

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

>conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

>First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950 (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading

standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

### Plaintiff Concedes that Town of Greece Police Department Was Not Properly Sued

Greece Defendants contend that Town of Greece Police Department is not an entity that can be sued separately from the City. Plaintiff now concedes that point. The Court agrees and therefore dismisses Town of Greece Police Department from this action. *See, Pierre v. City of Rochester*, No. 16-CV-6428 CJS, 2018 WL 10072453, at *10 (W.D.N.Y. Sept. 7, 2018) ("The City Defendants are correct that the RPD, which is an administrative arm of the City [of Rochester] and lacks the capacity to sue or be sued, is not a proper defendant in this matter. As such, the City Defendants' motion to dismiss is granted as to all claims against the RPD.") (quoting *Casaccia v. City of Rochester*, No. 6:17-CV-06323-MAT, 2018 WL 324420, at *4 (W.D.N.Y. Jan. 8, 2018) (Telesca, J.)); *accord, Butterworth v. Town of Greece*, No. 20-CV-6162-FPG, 2021 WL 241961, at *3 (W.D.N.Y. Jan. 25, 2021) (dismissing claim against Greece Police Department).

### The Complaint Fails to State a Supervisory or *Monell* Claim Against Greece Defendants Under Section 1983

The Complaint's Second Cause of Action purports to state a claim for "failure to supervise (1983)," while the Third Cause of Action purports to state a "*Monell* claim." Both of those claims are asserted against Town of Greece, but not against any individual Greece employee. That is, the Complaint does not purport to sue any individual Greece Defendant in a supervisory capacity. Instead, both causes of action allege that Town of Greece had a policy, practice and custom of allowing "individual officers" to violate citizens' constitutional rights. According to the Complaint, Town of Greece's policy or

practice in that regard is evident from the Town's failure to train, supervise or reprimand its officers, and from its policy of indemnifying officers who are sued.  The Second Cause of Action emphasizes Town of Greece's alleged failure to train and supervise its officers, while the Third Cause of Action emphasizes Town of Greece's alleged failure to reprimand officers and its policy of indemnifying officers for their tortious acts.  In sum, despite being pleaded as separate Section 1983 claims, the Second and Third Causes of Action are essentially a single *Monell* claim against Town of Greece.

To establish municipal or *Monell* liability under § 1983 relating to a constitutional violation committed by a municipal employee in the course of his employment, "a plaintiff must establish that action pursuant to official municipal policy caused his injury." *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d Cir. 2018) (citation and internal quotation marks omitted).

> Municipalities, and individuals sued in their official capacity, are liable under § 1983 only if the challenged conduct was pursuant to a municipal policy or custom, or caused by a failure to train. To satisfy *Monell*'s policy or custom requirement, a plaintiff must show either that the challenged practice was so persistent or widespread as to constitute a custom or usage with the force of law, or that the practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. To establish municipal liability based on a failure to act, [such as a failure to train,] a plaintiff must show that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights. A general and conclusory allegation of a municipal policy or custom fails to state a facially plausible *Monell* claim.

*Valdiviezo v. Boyer*, No. 17-1093, 752 Fed.Appx. 29, 31, 2018 WL 5096345 at *1 (2d Cir. Oct. 18, 2018) (citations and internal quotation marks omitted).

Town of Greece contends that the Complaint fails to plausibly allege that Plaintiff's alleged injuries are attributable to any Town custom, policy or practice. In this regard, Town of Greece states, in pertinent part:

> Mr. Bryant's Complaint sets forth conclusory allegations, <u>alleged upon information and belief</u>, of various customs, policies or practices of the Town of Greece alleged to exist merely because of the occurrence of the subject incident. These conclusory allegations do nothing more than to recite the elements for making a *Monell* claim without supporting factual detail and are therefore insufficient to state a claim for municipal liability.
>
> ***
>
> Mr. Bryant's allegations of inadequate training fail to offer any plausible basis for concluding that the Town of Greece or any of its supervisory personnel deliberately chose to ignore the training of police officers on the use of force and/or making arrests. The Complaint is devoid of any allegations of prior similar police misconduct as would normally be necessary to demonstrate the Town of Greece's deliberate indifference to the rights of persons with whom its police officers come into contact. To the contrary, Mr. Bryant's Complaint is based entirely upon the occurrence of the subject incident.
>
> ***
>
> A single incident of misconduct that involves only actors below the policymaking level is, as a matter of law, insufficient to establish the existence of a policy.

ECF No. 6-2 at pp. 7–8, 10 (emphasis in original, citations omitted).

Plaintiff responds, in pertinent part, by stating that he needs discovery in order to support his *Monell* claim against Town of Greece, and that he has nevertheless adequately pleaded a *Monell* claim based on both an alleged failure to train and on Town of Greece's "*de facto* policy of automatically indemnifying" its police officers.

Putting aside Town of Greece's alleged "*de facto* policy of automatic indemnification," the Complaint fails to plausibly allege the existence of any other municipal custom, policy, practice or failure to train that is causally related to Plaintiff's

injuries. Rather, the Complaint's allegations on those points are entirely conclusory and unsupported by plausible factual allegations. The Complaint does not plausibly allege that Town of Greece actually condoned or ignored Greece Police officers making arrests without probable cause or using excessive force, nor does it plausibly allege that Town of Greece failed to train its officers concerning those matters. Accordingly, insofar as the *Monell* claim against Town of Greece is based on anything other than the alleged *de facto* policy of automatic indemnification, it is dismissed for failure to state a claim.

As for the alleged "*de facto* policy of automatic indemnification," Plaintiff cites cases from the Ninth Circuit involving municipal liability based on the indemnification of police officers for excessive force. This Court, of course, is not bound by such rulings. Additionally, the cases cited by Plaintiff are factually inapposite, since they involve a municipal policy of indemnifying employees for *punitive* damages awards in excessive force cases,[6] and the Complaint does not plausibly allege that Town of Greece has such a policy. Indeed, the Complaint does not identify any Town of Greece ordinance providing for such indemnification, nor does it plausibly allege facts to support the existence of a *de facto* policy of automatic indemnification of police officers in civil actions involving false arrest, excessive force or malicious prosecution. *See, e.g.*, Compl. at ¶ ¶ 90–93 (Alleging upon information and belief the existence of such a policy but not citing any instance in which such policy was applied).

Moreover, even assuming that such a policy existed, the Complaint does not plausibly allege that Town of Greece was aware of, let alone deliberately indifferent to, the alleged injurious effects the indemnification policy had on citizens such as Plaintiff, by

---

[6] *See, Cunningham v. Gates*, 229 F.3d 1271, 1277 (9th Cir. 2000), as amended (Oct. 31, 2000) and *Hawkins v. Baca*, 114 F. Supp. 2d 987 (C.D. Cal. 2000).

emboldening police officers to commit unconstitutional acts. Rather, Plaintiff's allegations on that point are merely bald, conclusory assertions. *See, e.g.*, Compl. at ¶ ¶ 78-102 (Alleging that Town of Greece was aware of and condoned the use of false arrests, excessive force and false charges to cover up illegal conduct, but failing to identify any instance of such).

Consequently, the Second and Third Causes of Action are dismissed as against Town of Greece.

### Greece Defendants' Motion Directed at the Fourth and Fifth Causes of Action is Granted as to Town of Greece But Denied As to All Other Greece Defendants

Greece Defendants maintain that the Fourth and Fifth Causes of Action also fail to state *Monell* claims. Plaintiff disputes that contention. The Court frankly does not view those causes of action as attempting to assert *Monell* claims. Nevertheless, the Court finds that insofar as the Fourth and Fifth Causes of Action are intending to assert *Monell* claims against Town of Greece or against any Greece Defendant sued in an official capacity, they fail to state any actionable *Monell* claim for the reasons just explained. However, Greece Defendants' motion to dismiss the Fourth and Fifth Causes of Action is denied as to any Greece Defendant sued in an individual capacity.

### Plaintiff's Alternative Request to Amend is Denied

Plaintiff's opposition contains the following statement: "In the event that this Honorable Court decides to dismiss the Complaint, in whole or in part, Plaintiff also respectfully requests the opportunity to replead pursuant to FRCP 15(a)(2)."[7] Although leave to amend should be freely granted in general, Plaintiff has not submitted a proposed

---

[7] ECF No. 30 at p. 7.

amended pleading or otherwise complied with Rule 15(a)-(b) of the Local Rules of Civil Procedure.  Nor, in any event, do the Complaint or Plaintiff's response give any indication that Plaintiff can re-plead any of the dismissed claims against Town of Greece.  Consequently, Plaintiff's request to amend is denied at this time.

## CONCLUSION

Greece Defendants' Motion to Dismiss (ECF No. 6) is granted in part and denied in part for the reasons stated above.  The motion is granted to the extent that Town of Greece Police Department is dismissed from the action, and the Second, Third, Fourth and Fifth Causes of Action are dismissed as against Town of Greece and any Greece Defendant sued in an official capacity.  Otherwise, Greece Defendants' motion is denied.  In that regard, all but the Second and Third Causes of Action shall proceed as against Greece Defendants sued in their individual capacities.  The Clerk of the Court is directed to terminate Town of Greece Police Department as a party to this action.  The remaining served Greece Defendants shall file and serve an Answer within fourteen days as required by Fed. R. Civ. P. 12(a)(4)(A).

SO ORDERED.

Dated: Rochester, New York
　　　　January 11, 2022

　　　　　　　　　　　　　　　ENTER:

　　　　　　　　　　　　　　　*Charles J. Siragusa*
　　　　　　　　　　　　　　　CHARLES J. SIRAGUSA
　　　　　　　　　　　　　　　United States District Judge