UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAWN BRYANT,

                                  Plaintiff,

-vs-

MONROE COUNTY, et al.,

                                  Defendants.

_____

                                DECISION and ORDER

                                19-CV-6474 CJS

## INTRODUCTION

This is an action asserting constitutional violations under 42 U.S.C. § 1983 ("Section 1983")[1] and state tort claims, arising from an incident in which Plaintiff alleges that he was arrested without probable cause, subjected to excessive force and falsely prosecuted.  Now before the Court is a motion (ECF No. 7) by the City of Rochester, the City of Rochester Police Department, City of Rochester Police Officer DeMarco ("DeMarco"), City of Rochester Police Officer Boskat ("Boskat") and City of Rochester Police Officer John/Jane Does #1-10 (collectively "the City Defendants") to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The application is granted in part and denied in part.

---

[1] Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09BCVB00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.

BACKGROUND

The Complaint

For purposes of this Decision and Order the facts alleged in the Complaint are presumed to be true.[2]  In pertinent part, those facts are as follows:

29. Plaintiff is an individual who resides in Worcester County, State of Massachusetts, who suffers from bipolar disorder.

30. [Plaintiff contends that] Defendants arrested and prosecuted Plaintiff for crimes which Plaintiff did not commit and for which there was no probable cause to charge and prosecute Plaintiff.

31. On July 1, 2018, at or about 3:00 p.m., Plaintiff was searching for his father who owned a barber shop located at 2850 Dewey Avenue, Rochester, New York 14616.

32. Plaintiff did not have his telephone at that time and was unable to contact his father to find his whereabouts.

33. After Plaintiff saw that his father was not at his barber shop, Plaintiff went across the street to Children's Gallery Salon, located at 2855 Dewey Avenue, Rochester, New York 14616, to further search for his father.

34. Plaintiff lawfully entered Children's Gallery Salon, looked for his father, and left the salon when the employees requested him to leave.

35. After leaving the salon, Plaintiff was lawfully walking around a public street looking for his father when Defendants [Town of Greece Police Officers ("GPO")] GPO MURPHY and GPO CARMODY arrived on the scene.

36. Defendants GPO MURPHY and GPO CARMODY stopped Plaintiff, asked Plaintiff for his name and what he was doing, to which Plaintiff responded that he was looking for his father.

---

[2] On a Rule 12(b)(6) motion "[a]ll factual allegations in the complaint are . . . presumed to be true.  And all reasonable inferences are drawn in favor of the plaintiff.  However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)

37. Plaintiff gave the officers his father's phone number and GPO CARMODY contacted Plaintiff's father.

38. GPO MURPHY and GPO CARMODY offered to drive Plaintiff to his father's location, and told Plaintiff to turn around because he had to be patted down before getting in the patrol car.

39. However, rather than patting Plaintiff down, GPO MURPHY and GPO CARMODY, without any legal basis and unbeknownst to Plaintiff, proceeded to handcuff Plaintiff on his right wrist despite the fact that Plaintiff had not committed any crime and without informing Plaintiff what he was being handcuffed for.

40. Plaintiff was surprised by suddenly being handcuffed without warning and pulled away from GPO MURPHY and GPO CARMODY to ask why he was being arrested instead of being taken to his father.

41. Rather than telling Plaintiff the reason for the arrest, GPO MURPHY and/or GPO CARMODY continued their attempts to arrest Plaintiff despite having no probable cause [to believe] that any crime had occurred.

42. Plaintiff then continued to ask why he was being arrested at which point GPO MURPHY and/or GPO CARMODY proceeded to punch Plaintiff in the face.

43. GPO MURPHY and/or GPO CARMODY continued to punch Plaintiff in the face multiple times before Plaintiff went down to the ground.

44. While Plaintiff was on the ground, at least six (6) more officers arrived on the scene, and continued to strike Plaintiff while he was on the pavement.

45. While Plaintiff was down on the ground, GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, [City of Rochester Police Officer ("RPO")] RPO DEMARCO, RPO BOSKAT, RPO DOES and/or [New York State Police ("NYSPD")] NYSPD DOES continued to assault Plaintiff about his head and body, and forcefully held Plaintiff down on the scorching hot pavement, despite the fact that Plaintiff was already subdued and handcuffed.

46. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES tased Plaintiff several times while Plaintiff was on the ground, without any legal basis to do so, and after Plaintiff was already subdued and handcuffed.

47. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES continued to assault and again tase Plaintiff even though he was handcuffed and fully subdued on the pavement for no legitimate purpose.

48. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES continued to press Plaintiff's skin against the scorching hot pavement, after Plaintiff was handcuffed and subdued, for approximately twenty (20) minutes, despite Plaintiff's pleas that his skin was being burnt.

49. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, DET BEER, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES continued the use of physical force against Plaintiff after Plaintiff was handcuffed.

50. July 1, 2018 was an especially hot day, with temperatures reaching up to 093 degrees Fahrenheit, and the pavement was burning hot at the time Plaintiff was being pressed against the pavement.

51. While being held down by the aforementioned officers on the pavement, Plaintiff screamed multiple times that he was burning, because his arms were in direct contact with the pavement, to no avail.

52. While being held down by the aforementioned officers on the pavement, Plaintiff screamed multiple times that he could not breath, to no avail.

53. Despite Plaintiff's pleas, the aforementioned officers continued to hold Plaintiff down on the pavement, and continued to assault Plaintiff about his head and body.

54. Plaintiff was forcefully held down on the burning pavement for approximately twenty (20) minutes causing severe injuries to his body as a direct result of same, despite his multiple pleas to the aforementioned officers that his skin was burning.

55. As a result of Defendants' actions, Plaintiff suffered third-degree burns on both of his arms.

56. GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, SGT POTTER, DET BEER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES witnessed the excessive force, but failed to intervene, despite knowing that such action was unlawful.

57. Plaintiff was then taken to Rochester General Hospital, where he stayed for approximately twelve (12) hours, two (2) hours out of which Plaintiff was strapped down to a gurney.

58. After being discharged from Rochester General Hospital, Defendants transported Plaintiff to the police station, where he was booked and sent to the county jail.

59. On or about July 1, 2018, DET BEER signed and filed a Felony Complaint charging Plaintiff with crimes that he did not commit in order to cover up their unlawful assault on Plaintiff earlier in the day.

60. On or about July 1, 2018, GPO MURPHY, GPO CARMODY, GPO HEWGLER, GPO SMITH, GPO D'AURELIO, GPO CUTT, GPO REEDER, GPO DOES, SGT POTTER, RPO DEMARCO, RPO BOSKAT, RPO DOES and/or NYSPD DOES witnessed DET BEER sign and file a Felony Complaint charging Plaintiff with crimes that he did not commit, but failed to intervene, despite knowing that such action was unlawful.

61. Plaintiff spent approximately six (6) hours in the county jail before he was able to make bail.

62. By the time Plaintiff was bailed out of the county jail, the burns on Plaintiff's arms had become infected.

63. Because of the burns to his arms, Plaintiff had to be readmitted to the hospital and receive skin grafting on both of his arms, from his forearms all the way to the shoulders.

64. Plaintiff had to receive additional plastic surgery on both of his arms due to the scars that were left behind from the burns and the skin grafting procedure due to the excessive force and callous indifference of Defendants.

65. [Plaintiff contends that] Defendants possessed no legal justification for physically engaging Plaintiff or for arresting Plaintiff as no crime had occurred.

66. During Defendants' use of physical force on Plaintiff's body, Plaintiff was physically injured, disabled, and permanently scarred.

67. Pursuant to the New York State General Municipal Law, Plaintiff served a Notice of Claim upon ROCHESTER, GREECE, and the State of New York, within the 90-day statutory period, giving Notice of these claims to the extent required by Law.

68. Pursuant to Section 50-h of the New York State General Municipal Law, Plaintiff appeared for a hearing that was conducted on behalf of Defendant GREECE.

69. Over thirty (30) days has since expired without GREECE remedying, settling, or adjusting this claim.

Compl. (ECF No. 1) at ¶ ¶ 29–69.

The Complaint alleges that Defendants used excessive force while arresting Plaintiff without probable cause, and then filed false criminal charges against him to cover up their wrongdoing. More specifically, the Complaint purports to assert seven (7) causes of action against the City Defendants: 1) Section 1983 claim for excessive force against all City Defendants; 2) Section 1983 claim for failure to supervise against the City; 3)

Section 1983 *Monell* claim against the City; 4) Section 1983 "substantive due process" (based on unjustified arrest and filing of false criminal charges) claim against all City Defendants; 5) Section 1983 "procedural due process claim" (based on denial of procedural right to education) against all City Defendants; 6) "pendent" state tort claim for assault and battery against all City Defendants; and 7) "pendent" state tort claim for negligent hiring/supervision/retention against the City.  The individual City Defendants are sued in their individual and official capacities.

<u>City Defendants' Motion to Dismiss</u>

On August 16, 2019, City Defendants filed the subject motion to dismiss the Complaint (ECF No. 7).  City Defendants raise the following arguments: 1) "the Rochester Police Department is not a suable entity"; 2) "the [14th Amendment] substantive and procedural due process claims fail as a matter of law" since they are really 4th Amendment claims and since the claims are not plausibly pleaded in any event; 3) the "claims for use of excessive force, assault and battery against the RPD officers are not plausible" since they fail to specify any particular wrongdoing by RPD officers; 4) "the supervisory liability claim fails for lack of personal involvement" by any City supervisory employee; 5) "the claim for [*Monell*] municipal liability against the City of Rochester fails" since the Complaint does not plausibly allege a municipal policy connected to Plaintiff's injuries; and 6) "the negligent hiring, supervision and retention claim fails" since such a claim only applies where an employee commits a tort while acting outside the scope of his employment, and the Complaint alleges that the individual City defendants were acting within the scope of their employment.

Particularly with regard to the lack of plausible allegations concerning the alleged use of excessive force (including a failure to intervene) and filing of false criminal charges[3] by RPD Officers, City Defendants state as follows:

Plaintiff alleges that, on July 1, 2018, Greece Police Officers Murphy and Carmody attempted to arrest him despite not having probable cause to believe that plaintiff had committed a crime. These Greece Police officers placed a handcuff on plaintiff's right wrist, at which time plaintiff "pulled away from" the officers. Greece Police Officers Murphy and Carmody physically struggled to place plaintiff under arrest, bringing him to the ground. Once plaintiff was on the ground, "at least six (6) more officers arrived" and "continued to strike Plaintiff while he was on the pavement." *See* Complaint, ¶ 44. *It is not alleged that RPD Officers Boskat and Demarco were part of this group of "at least six (6) or more officers." At paragraph 45 of the complaint, however, RPD Officers Boskat and Demarco are alleged to be present along with Greece Police Officers Murphy, Carmody, Hewgler, Smith, D'aurelio, Cutt, Reeder, Beer and Potter, as well as other unnamed New York State Police personnel.* It is alleged that this group of more than eleven officers "continued to assault Plaintiff about his head and body, and forcefully held Plaintiff down on the scorching hot pavement, despite the fact that Plaintiff was already subdued and handcuffed." *See* Complaint, ¶ 45. *The complaint does not say what specific actions any of these particular defendants took, whether and how RPD Officers Boskat and Demarco "assault[ed] Plaintiff about his head and body" or whether these officers were individually involved in holding plaintiff against the "scorching hot pavement."*

Complaint paragraph 46 similarly alleges that these eleven-plus defendants "tased plaintiff several times" but does not articulate which officers used a taser or where the taser contacted plaintiff. Paragraphs 47 to 49 each continue to allege that these eleven-plus officers used physical force against plaintiff after he was in handcuffs, without articulating any particular uses of force by any particular officers. Indeed, the complaint does not even articulate when plaintiff's left hand was cuffed or by whom.

---

[3] Plaintiff designates the alleged filing of false criminal charges as a substantive due process claim. See, Complaint, Fourth Cause of Action for Substantive Due Process violation at ¶ 104 ("Defendants trumped up false charges against Plaintiff in order to cover up their excessive force, despite the fact that Plaintiff committed no crimes at the time of his initial seizure.").

Paragraph 56 of the complaint alleges that the same eleven-plus officers who were involved in the alleged use of force against plaintiff also failed to intervene to prevent the same use of force—paragraph 56 does not specify which officers failed to intervene in which other officers' use of force, does not provide any details about the proximity of any of the officers, the officers' observations, or their ability to intervene in any particular alleged use of excessive force.

Paragraph 59 alleges that Greece Police Detective Beer filed a Felony Complaint against plaintiff, but does not set forth when or where this took place. Paragraph 60 alleges that the same group of officers alleged to have used physical force against plaintiff also witnessed Greece Police Detective Beer file the Felony Complaint and failed to intervene. *There is no explanation provided in the complaint setting forth the reason that ten or more police officers stood around watching as Detective Beer swore and filed a Felony Complaint, nor is there any description or explanation of why RPD Officers Boskat and Demarco would have waited to observe the filing of a complaint by a different policing jurisdiction.*

ECF No. 7-3 at pp. 2–4 (emphasis added; footnote omitted).  In sum, City Defendants contend that the Complaint impermissibly groups or lumps the RPD officers together with the rest of the defendants without specifying the actions of any particular RPD officer.

On October 4, 2019, Plaintiff filed a response (ECF No. 28) to City Defendants' motion.  Plaintiff purports to oppose City Defendants' entire motion, except that he now concedes that the Rochester Police Department is not an entity that can be sued.  He also acknowledges that the City cannot be sued for negligent hiring, retention, training or supervision under New York law where, as here, it is alleged that the City employees were acting within the scope of their employment.  Otherwise, though, Plaintiff maintains that he has pleaded actionable claims.

More specifically, Plaintiff maintains, first, that the Complaint adequately states a 14th Amendment Substantive Due Process claim against City Defendants, based on

Plaintiff's confinement at the jail for six hours after he was falsely charged, during which time his injuries became infected:

> [T]he Complaint adequately states a cause of action for violations of Plaintiff's substantive due process rights.  Moving Defendants correctly note that excessive force used by law enforcement during an arrest is governed by the Fourth Amendment.  However, while Moving Defendants attempt to frame the issue solely [as involving] ] the excessive force used in the arrest of Plaintiff, they ignore that part of the Complaint which alleges that, after his arrest, Plaintiff was forced to stay in jail despite suffering from severe burns to both of his arms.  . . .  The Complaint further states that Defendant Officer Beer 'signed and filed a Felony Complaint charging Plaintiff with crimes that he did not commit in order to cover up [the] unlawful assault on Plaintiff earlier that day.'  This false criminal complaint against Plaintiff caused Plaintiff to be unlawfully held in County jail, which led to further injuries after Plaintiff's arrest had been made.  Accepting the Complaint as true, Plaintiff has properly stated a cause of action for violation of his due process rights under the Fourteenth Amendment[.]

ECF No. 28 at p. 4 (citation omitted).

Plaintiff also contends that the Complaint states plausible claims for excessive force, assault, battery and failure to intervene against the individual RPD officers.  On this point, Plaintiff states that due to the circumstances of his arrest he should not be required to allege what each defendant did to him without the benefit of discovery.  In this regard, Plaintiff maintains that City Defendant's argument about impermissible group pleading

> is premature, as the parties have not yet exchanged meaningful discovery that would allow Plaintiff to properly identify each defendant and make the proper allegations against each of them.  Here, Plaintiff was subjected to excessive violence from at least eleven law enforcement officers that he had seen for the first time.  *Plaintiff was only able to identify the officers' names after receiving limited discovery from Plaintiff's criminal case.*  Given the situation, it is impossible for Plaintiff at this stage of the litigation to point out particular acts of each officer who had been assaulting him while he was already down on the ground on his arms.

ECF No. 28 at pp. 5–6.

Plaintiff further contends that he has plausibly stated a claim for supervisory liability notwithstanding the fact that he has not identified anyone who was responsible for supervising the RPD officers, since knowledge of the identity of such a supervisor would be in the exclusive possession of the City at this time.  Plaintiff also asserts that he has plausibly alleged that the City failed to "adequately supervise, control, oversee and/or monitor" the RPD officers.  Plaintiff further maintains that he has pleaded a *Monell* claim against the City, based on the City's alleged policy of condoning and covering up officers' use of excessive force and false charges, and on its "*de facto* policy" of automatically indemnifying city police officers for unlawful conduct.  Plaintiff also states that he may be able to show, after discovery, that the City acted with deliberate indifference in failing to train or supervise the RPD officers.

Finally, Plaintiff alternatively seeks leave to file an amended complaint.  In that regard, Plaintiff now admits, as noted earlier, that the Complaint fails to state a claim for negligent hiring, retention, training or supervision, since it alleges that all City officers were acting within the scope of their employment.  Plaintiff nevertheless contends that he can amend the Complaint to allege that the City is vicariously liable for the actions of its officers under the theory of *respondeat superior*.

On November 1, 2021, City Defendants filed a Reply (ECF No. 32).  City Defendants first reiterate that the Complaint fails to state a due process claim against them.  In that regard, City Defendants point out that in Plaintiff's response he explains that his Substantive Due Process claim is based on the alleged filing of a "false felony complaint" that resulted in his confinement in jail for six hours.  City Defendants contend, however, that the felony complaint was filed by Greece Police Sergeant Beer, and that

the Complaint in this action both "fails to articulate any role played by RPD Officers Boskat or DeMarco in detaining Plaintiff in [the] County Jail" and "does not allege that either [Boskat or DeMarco] was involved in transporting Plaintiff to the County Jail, transferring custody of him to the County Jail, or preferring charges against him."  City Defendants also reiterate that the allegations concerning the arrest and use of force amount to impermissible and vague "group pleading" that fails to state a plausible claim against any RPD officer.  Finally, City Defendants argue that the Complaint fails to state a plausible *Monell* claim, since such claim is based on "baldly conclusory allegations of a practice [or] custom, unsupported by any facts other than [those concerning] Plaintiff's own singular arrest."[4]

DISCUSSION

<u>Motion Under Fed. R. Civ. P. 12(b)(6)</u>

City Defendants seek dismissal under Rule 12(b)(6).  The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) [("*Iqbal*")].

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above

---

[4] ECF No. 32 at p. 3.

the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950 (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

<u>Plaintiff Now Concedes that the City of Rochester Police Department</u>
<u>Was Not Properly Sued</u>

City Defendants contend that the City Police Department is "not a suable entity" separate from the City.  Plaintiff now concedes that point.  The Court agrees and therefore dismisses the City of Rochester Police Department from this action. *See, Pierre v. City of Rochester*, No. 16-CV-6428 CJS, 2018 WL 10072453, at *10 (W.D.N.Y. Sept. 7, 2018) ("The City Defendants are correct that the RPD, which is an administrative arm of the City [of Rochester] and lacks the capacity to sue or be sued, is not a proper defendant in this matter. As such, the City Defendants' motion to dismiss is granted as to all claims against the RPD.") (quoting *Casaccia v. City of Rochester*, No. 6:17-CV-06323-MAT, 2018 WL 324420, at *4 (W.D.N.Y. Jan. 8, 2018) (Telesca, J.)).

<u>Plaintiff Has Abandoned His Fifth Cause of Action</u>
<u>Alleging a Procedural Due Process Violation</u>

Plaintiff purports to oppose City Defendants' entire motion to dismiss, but he has not responded to City Defendants' argument concerning the Complaint's Fifth Cause of Action, which alleges that, "[a]s a result of [Plaintiff's] arrest, [he] was denied his procedural right under the United States Constitution and the New York State Constitution to any education."[5]

City Defendants point out, initially, that this allegation is seemingly nonsensical since the Complaint does not otherwise reference any alleged right to, or denial of, education.[6]  Additionally, City Defendants argue that any claim arising from Plaintiff's

---

[5] ECF No. 1 at ¶ 91.
[6] *See*, ECF No. 7-3 at p. 5 ("As an initial matter, none of the factual allegations in the complaint concern Plaintiff's education, and it is not clear how his arrest could have interfered with his purported procedural due process rights to an education.").

arrest would fall "under the 4th Amendment, not the more general due process clause of the 14th Amendment."[7]  Plaintiff's response to City Defendants' motion does not explain the Fifth Cause of Action or otherwise respond to City Defendants' arguments directed at that claim.   Instead, Plaintiff argues only that the Complaint states a *substantive* due process claim, referring to the Fourth Cause of Action.[8]

"A district court may, and generally will, deem a claim abandoned when a plaintiff [represented by counsel] fails to respond to a defendant's arguments that the claim should be dismissed." *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (collecting cases, citation and internal quotation marks omitted); *see also, Rugg v. City of New York*, No. 18 CIV. 9762 (LAP), 2019 WL 3242493, at *7 (S.D.N.Y. July 8, 2019) ("Plaintiff does not address his fifth and sixth causes of action in his response letter to the City's motion to dismiss, therefore the State and City hostile work environment claims are deemed abandoned.").

Here, the Court finds that Plaintiff has abandoned the Fifth Cause of Action as against City Defendants since he has not responded to that aspect of City Defendants' motion.  Plaintiff has not attempted to show how the Complaint states a claim against City Defendants for violating his alleged 14th Amendment procedural due process right to education.  Moreover, the Complaint fails to state an actionable claim in any event, since it does not plausibly allege that City Defendants denied Plaintiff any procedural due process right.   Consequently, the Fifth Cause of Action is dismissed as against City

---

7 ECF No. 7-3 at p. 5.
8 ECF No. 28 at p. 4 ("Plaintiff properly pled substantive due process claims under the Fourteenth Amendment.").  In particular, Plaintiff alleges that the substantive due process violation occurred when he was improperly charged with a crime and sent to jail.  ECF No. 28 at p. 4.  However, as discussed below, the Complaint also fails to plausibly allege that City Defendants were involved in charging Plaintiff with any crime.

Defendants.

<u>The Fourth Cause of Action Fails to State a Substantive</u>
<u>Due Process Claim Against City Defendants</u>

City Defendants next contend that the purported substantive due process claim fails as a matter of law since it is really a 4th Amendment claims and is not plausibly pleaded in any event.   Plaintiff responds that the claim properly falls under the 14th Amendment, and not the 4th Amendment, since it involves his unlawful detention in jail based on false criminal charges, as opposed to false arrest or excessive force.  Indeed, as mentioned earlier Plaintiff maintains that the Complaint adequately states a 14th Amendment Substantive Due Process claim against City Defendants, based on his confinement at the jail for six hours after he was arrested and charged.  Plaintiff admits that the false criminal charges were filed by Detective Beer, who is employed by the Town of Greece, and not the City of Rochester.   Nevertheless, Plaintiff argues that City Defendants were present when Beer filed the false charges and had a duty to intervene to prevent Beer from filing the false complaint.

The Court agrees with City Defendants that the Fourth Cause of Action fails to state a plausible claim.  In particular, and regardless of whether the claim is viewed as being properly brought under the 4th or 14th Amendments, the Complaint simply does not plausibly allege that any RPD officer was involved in filing false criminal charges against Plaintiff.  Even accepting as true that Beer filed a false criminal complaint against Plaintiff to cover up the alleged wrongful arrest and use of excessive force, the Complaint does not plausibly allege the personal involvement of any City Defendant in such filing.

First, there are no plausible facts pleaded to support the conclusory assertion that RPD officers observed Beer filing the false Complaint.  Plaintiff makes this conclusory

assertion in order to allege that the RPD officers had a duty and opportunity to intervene to prevent Beer from filing the false complaint. *See*, Compl. ¶ 60.  However, the Court is not aware of any case indicating that a police officer has a constitutional duty to intervene to prevent a fellow police officer from filing a false complaint, let alone an officer employed by a different municipality. *Cf., Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999) ("While officers have been subject to liability for failing to intervene when another officer uses excessive force, there is no previous decision from the Supreme Court or this Circuit holding that an officer has a duty to intervene and is therefore liable under the circumstances presented here. There is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession in a police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct.") (citation omitted).

Additionally, the allegation in the Complaint that the eleven or so officers who responded to the scene stood around and then watched as Beer filed the criminal complaint at some unspecified time later that day is entirely conclusory and highly implausible.

Moreover, even assuming *arguendo* that such a duty to intervene existed and that City Defendants had an opportunity to intervene to prevent Beer from filing the charges, the Complaint does not plausibly allege that any City Defendant had reason to know that the information in Beer's complaint was false.[9] In that regard, the Complaint alleges that RPD officers arrived on the scene only after officers from the Town of Greece were already arresting Plaintiff. *See, Nash v. McGinnis*, 585 F. Supp. 2d 455, 460 (W.D.N.Y.

---

[9] The Complaint does not indicate the crime or crimes for which Plaintiff was charged.

2008) ("Although plaintiff need not plead facts in great detail, the formulaic allegation that McGinnis was aware of the alleged violations and did nothing to stop them from occurring, without some factual allegations to explain the basis for that conclusion, is insufficient to render it plausible that McGinnis was personally involved in the alleged constitutional deprivations.").

Consequently, the Fourth Cause of Action is dismissed as against City Defendants for failure to state a claim.

<u>The First and Sixth Causes of Action State Plausible Claims</u>
<u>Against the Individual City Defendant Police Officers</u>

The First Cause of Action alleges a Section 1983 claim for excessive force and/or failure to protect/intervene, [10] while the Sixth Cause of Action alleges a state-law claim for assault and battery.  City Defendants maintain that these "claims for use of excessive force, assault and battery against the RPD officers are not plausible" since they fail to specify any particular wrongdoing by the RPD officers.   Plaintiff, meanwhile, argues that he should not be required to allege with specificity what each defendant did to him without the benefit of discovery, given the circumstances of his arrest.   Plaintiff's response essentially admits that at present, all he knows is the names of the officers who were present during his arrest, which he gleaned from documents provided to him as discovery in his criminal action.

To establish liability for money damages under § 1983 a plaintiff must demonstrate each defendant's personal involvement in the alleged constitutional violation:

> A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.

---

[10] The First Cause of Action (Compl. ¶ ¶  70–77) does not actually refer to a failure to protect/intervene, but the claim is referenced in ¶ 56 of the Complaint.

Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Because vicarious liability is inapplicable to § 1983 suits, [the plaintiff] must raise a genuine dispute as to whether each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), as amended (Feb. 24, 2016) (citations and internal quotation marks omitted).

Moreover, with regard to pleading requirements generally, in cases such as this that involve multiple defendants, a complaint must give each defendant fair notice of the claims being asserted against him. *See, Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("Although Fed.R.Civ.P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, *it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests*.  By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy this minimum standard[.]") (emphasis added; citations and internal quotation marks omitted).

However, context matters in this regard.  For example, in situations involving an alleged assault by a group of police officers or corrections officers, courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so.

"[C]ontext matters in notice pleading," and a survey of the case law interpreting both *Atuahene* and the "group pleading" doctrine more broadly shows that these rules are fact-dependent and far from absolute. *Id*. at 1249. For instance, motions to dismiss for improper "group pleading" fail when, even though the plaintiff refers to "defendants" generally rather than a particular defendant individually, it is sufficiently clear that "in the particular factual context of [the] case ... the complaint furnishes adequate notice for initial pleading purposes of plaintiff's claim of wrongdoing." *Bruce Kirby, Inc*.

*v. Quarter Moon, Inc.*, No. 17-CV-1389, 2018 WL 3614120, at *2 (D. Conn. July 27, 2018). In *Bruce Kirby*, the claim "involve[ed] the posting of allegedly infringing information on a website that [was] not peculiarly and facially traceable to any one defendant." *Id.* at *1. Despite the fact that the Complaint "often refer[red] to all four defendants collectively," it was allowed to proceed because, given the specific circumstances of the case and drawing all reasonable inferences in the plaintiff's favor, there was an understandable explanation for why the Complaint was not more particularized. *See also New York Am. Water Co., Inc. v. Dow Chemical Co.*, No. 19-CV-2150, No. 19-CV-5632, 2020 WL 9427226, at *4 (E.D.N.Y. Dec. 11, 2020) (noting that the pleading did group defendants together, but allowing it to proceed because "plaintiffs make clear that identical claims are [being] asserted against each defendant"); *Rosen v. Prudential Ret. Ins. and Annuity Co.*, No. 15-CV-1839, 2016 WL 7494320, at *12 (D. Conn. Dec. 30, 2016) (holding that plaintiffs had "sufficiently specified which claims are being brought against [the defendant], as well as the basic factual allegations associated with those claims" and allowing the claim to proceed despite defendants' argument that the Complaint had impermissibly grouped "two defendants together without distinguishing their conduct"); *Gao v. JPMorgan Chase & Co.*, No. 14-CV-4281, 2015 WL 3606308, at *6 (S.D.N.Y. June 9, 2015) (rejecting a "group pleading" argument because the "claims against [the defendant], and the grounds upon which they rest, [were] clear from the complaint").

The "particular factual context of [the] case" is even more important when pleadings allege police misconduct. *Bruce Kirby* 2018 WL 3614120, at *2. In *Messina v. Mazzeo*, 854 F.Supp. 116 (E.D.N.Y. 1994), the court assessed a fact pattern uncannily similar to the one here. In that case the plaintiff also brought a section 1983 claim, alleging that seven named police officers had violated his Fourth Amendment rights. The plaintiff referred to the individual defendants as "defendant Police Officers" in the Complaint, alleging that they "used excessive force in arresting [him] without describing what role each individual defendant played in the alleged constitutional violations." *Messina*, 854 F.Supp. at 125. Despite the lack of specificity as to which defendant did what, the court still declined to dismiss the claim. It reasoned that, because the plaintiff had specifically alleged that each individual officer was personally involved in the use of excessive force that gave rise to the violation, he had met the "constitutional[ ] imperative that defendants are put on notice as to the nature of the allegations against them." *Id.* at 126. This remained true even if he did not "set out [each]

defendant's precise role in the injurious conduct." *Id*. In reaching this conclusion, the court placed a special emphasis on the circumstances surrounding the incident. Since the plaintiff was alleging a use of excessive force during an arrest, "[i]t would be asking too much for an arrestee to remember and plead the role each of several police officer played in [this] alleged instance of police brutality." *Id*.

*Arias v. East Hartford*, No. 3:20-CV-00895 (JCH), 2021 WL 3268846, at *4 (D. Conn. July 30, 2021); *see also*, *Folk v. City of New York*, 243 F. Supp. 3d 363, 370 (E.D.N.Y. 2017) ("Viewed in the light most favorable to Plaintiff, the Amended Complaint plausibly alleges that all of the Individual Defendants directly participated in Plaintiff's arrest, or, in the alternative, failed to intervene to prevent it.  While Plaintiff must prove the roles the Individual Defendants played in her arrest to prevail on the merits, this Court will not dismiss her claims at this stage solely because her narrative is imprecise as to each Individual Defendant's role in her arrest.") (citations omitted); *McClean v. Cty. of Westchester*, No. 17-CV-4492 (CS), 2018 WL 6329420, at *6 (S.D.N.Y. Dec. 3, 2018), ("Whether a complaint should be dismissed based on impermissible group pleading hinges on whether adequate notice is given that will enable the adverse party to answer and prepare for trial and identify the nature of the case.") (citations and internal quotation marks omitted), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019); *Harrell v. New York State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7065(RA), 2019 WL 3821229, at *11 (S.D.N.Y. Aug. 14, 2019) ("The Court concludes that Plaintiff has satisfied Rule 8's requirements. Although several of the allegations in the Amended Complaint are generally linked to "the Fishkill Officers" or "Defendants," Defendants have been given fair notice of what the plaintiff's claim is and the ground upon which it rests. In several instances, Plaintiff plausibly alleges that all of the Defendant

Fishkill Officers were involved in the relevant unconstitutional conduct.") (citations and internal quotation marks omitted); *but see, Garcia v. Fischer*, No. 13 CV 8196 (VB), 2016 WL 297729, at *7 (S.D.N.Y. Jan. 22, 2016) ("[P]laintiffs' reliance on *Messina v. Mazzeo* is misplaced.  In that case, referring to defendants as "defendant Police Officers" in the complaint still alleged personal involvement by individual officers because the complaint alleged all individual police officers had used excessive force together. 854 F. Supp. 116, 125-26 (E.D.N.Y. 1994). Here, by contrast, the SCAC cannot plausibly allege all "Defendant Correction Officers" participated in every action attributed to the group.").

Applying these principles here, the Court finds that the First and Sixth Causes of Action are plausibly pleaded as against the individual RPD officers since they provide adequate notice of the claims being asserted against each officer.  In particular, the Complaint alleges that DeMarco, Boskat and the John Doe RPD officers each assaulted, battered and/or used excessive force against Plaintiff during the arrest.  Alternatively, the Complaint contends that each of those same officers failed to protect Plaintiff from the other officers who were unlawfully attacking him. Consequently, City Defendants' motion to dismiss the First and Sixth Causes of Action is denied as to the individual RPD officers. The motion to dismiss the Sixth Cause of Action is also denied as to the City of Rochester, since, as discussed below, that cause of action pleads a respondeat superior claim against the City.  The First Cause of Action fails, though, to state any claim against the City of Rochester.

> The Complaint Fails to State a Supervisory or *Monell*
> Claim Against the City of Rochester Under Section 1983

The Complaint's Second Cause of Action purports to state a claim for "failure to supervise (1983)," while the Third Cause of Action purports to state a "*Monell* claim."  Both

of those claims are asserted against the City, but not against any individual City employee. That is, those causes of action do not purport to sue any individual City Defendant in a supervisory capacity.[11] Instead, both causes of action allege that the City of Rochester has a policy, practice and custom of allowing "individual officers" to violate citizens' constitutional rights. According to the Complaint, the City's policy or practice in that regard is evident from the City's failure to train, supervise or reprimand its officers, and from its policy of indemnifying officers who are sued. The Second Cause of Action emphasizes the City's alleged failure to train and supervise its officers, while the Third Cause of Action emphasizes the City's alleged failure to reprimand officers and its policy of indemnifying officers for their tortious acts. In sum, despite being pleaded as separate Section 1983 claims, the Second and Third Causes of Action are essentially a single *Monell* claim against the City.

To establish municipal or *Monell* liability under § 1983 relating to a constitutional violation committed by a municipal employee in the course of his employment, "a plaintiff must establish that action pursuant to official municipal policy caused his injury." *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d Cir. 2018) (citation and internal quotation marks omitted).

> Municipalities, and individuals sued in their official capacity, are liable under § 1983 only if the challenged conduct was pursuant to a municipal policy or custom, or caused by a failure to train. To satisfy *Monell*'s policy or custom requirement, a plaintiff must show either that the challenged practice was so persistent or widespread as to constitute a custom or usage with the force of law, or that the practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. To establish municipal liability based on a failure to act, [such as a failure to train,] a plaintiff must show that defendants knew to a moral certainty that

---

[11] Because of this, the parties' arguments concerning individual supervisory defendants are misplaced.

the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights. A general and conclusory allegation of a municipal policy or custom fails to state a facially plausible *Monell* claim.

*Valdiviezo v. Boyer*, No. 17-1093, 752 Fed.Appx. 29, 31, 2018 WL 5096345 at *1 (2d Cir. Oct. 18, 2018) (citations and internal quotation marks omitted).

City Defendants contend that the Complaint fails to plausibly allege that Plaintiff's alleged injuries are attributable to any City custom, policy or practice.   Plaintiff responds, in pertinent part, by stating that he needs discovery in order to support his *Monell* claim against the City, and that he has nevertheless adequately pleaded a *Monell* claim based on both an alleged failure to train and on the City's "*de facto* policy of automatically indemnifying" its police officers.

Putting aside the City's alleged "*de facto* policy of automatic indemnification," the Complaint fails to plausibly allege the existence of any municipal custom, policy, practice or failure to train that is causally related to Plaintiff's injuries.  Rather, the Complaint's allegations on those points are entirely conclusory and unsupported by plausible factual allegations.  The Complaint does not plausibly allege that the City actually condoned or ignored RPD officers making arrests without probable cause or using excessive force, nor does it plausibly allege that the City failed to train its officers concerning those matters. Accordingly, insofar as the *Monell* claim against the City is based on anything other than the alleged *de facto* policy of automatic indemnification, it is dismissed for failure to state a claim.

As for the alleged "*de facto* policy of automatic indemnification," Plaintiff cites cases from the Ninth Circuit involving municipal liability based on the indemnification of

police officers for excessive force.  This Court, of course, is not bound by such rulings. Additionally, the cases cited by Plaintiff are factually inapposite, since they involve a municipal policy of indemnifying employees for *punitive* damages awards in excessive force cases,[12] and the Complaint does not plausibly allege that the City of Rochester has such a policy.  In that regard, the Complaint does not identify any City ordinance providing for such indemnification, nor does it plausibly allege facts to support the existence of a *de facto* policy of automatic indemnification of police officers in civil actions involving false arrest, excessive force or malicious prosecution. *See, e.g.*, Compl. at ¶ ¶ 90–93 (Alleging upon information and belief the existence of such a policy but not citing any instance in which such policy was applied).

Moreover, even assuming that such a policy existed, the Complaint does not plausibly allege that the City of Rochester was aware of, or deliberately indifferent to, the alleged injurious effects the policy had on citizens such as Plaintiff, by emboldening police officers to commit unconstitutional acts.  Rather, Plaintiff's allegations on that point are merely bald, conclusory assertions. *See, e.g.*, Compl. at ¶ ¶ 78–102 (Alleging that the City was aware of and condoned the use of false arrests, excessive force and false charges to cover up illegal conduct, but failing to identify any instance of such).

Consequently, the Second and Third Causes of Action are dismissed as against the City of Rochester.

---

[12] *See, Cunningham v. Gates*, 229 F.3d 1271, 1277 (9th Cir. 2000), as amended (Oct. 31, 2000) and *Hawkins v. Baca*, 114 F. Supp. 2d 987 (C.D. Cal. 2000).

<u>The Complaint Fails to State a Claim for</u>
<u>Negligent Hiring, Training or Supervision</u>

City Defendants further maintain that the Complaint fails to state a claim under New York law for negligent hiring, training or supervision, since the Complaint alleges that the RPD officers sued herein were acting within the scope of their employment. *See*, Compl. at ¶ ¶ 8–10 (alleging that DeMarco, Boskat and the "RPO Does" acted within the scope of their employment).   Plaintiff's response baldly insists that the Complaint adequately pleads such a claim, but also "concedes that the RPD officers were working within the scope of their employment,"[13] and indicates that Plaintiff can, "if required," instead plead a claim against the City based on *respondeat superior* liability.

From this, Plaintiff effectively concedes the point, and in any event the Court agrees with City Defendants that the Complaint's Seventh Cause of Action, alleging a claim of negligent hiring, retention, training or supervision, is incompatible with the Complaint's unambiguous factual assertion that the defendant RPD officers were acting in the scope of their employment at all relevant times.[14]   In this regard, the Court has previously described New York law concerning negligent hiring, training and supervision, as being that

> where the acts of employees are concerned, an employer ... may be held directly liable for negligent hiring, retention, or supervision' for acts committed outside that scope. ... [However, because an employer is vicariously liable for torts committed by an employee within the scope of his employment,] the only time a claim for negligent retention, training or supervision makes sense is when an employee tortiously injures someone while acting outside the scope of his employment, and the injured party cannot hold the employer vicariously liable in *respondeat superior* for the employee's tort, but may be able to hold the employer liable for its own

---

[13] ECF No. 28 at p. 9.
[14] There is no alternative assertion that the officers were acting outside the scope of their employment.

negligence in retaining, training or supervising the employee.

*Ben v. United States*, 160 F. Supp. 3d 460, 476–77 (N.D.N.Y. 2016) (citations and internal quotation marks omitted) (Siragusa, J. as acting Judge of N.D.N.Y.); *accord, Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594 (CJS), 2018 WL 2100605, at *27 (W.D.N.Y. May 7, 2018) (quoting *Ben v. United States*).  Consequently, the Seventh Cause of Action is dismissed as against City Defendants.

<u>Plaintiff's Alternative Request to Amend is Denied</u>

Plaintiff's opposition contains the following statement: "In the event that this Honorable Court decides to dismiss the Complaint, in whole or in part, Plaintiff also respectfully requests the opportunity to replead pursuant to FRCP 15(a)(2)."[15]  Although leave to amend should be freely granted in general, Plaintiff has not submitted a proposed amended pleading or otherwise complied with Rule 15(a)-(b) of the Local Rules of Civil Procedure.  Nor, in any event, do the Complaint or Plaintiff's response give any indication that Plaintiff can re-plead any of the dismissed claims state against the City.  Consequently, Plaintiff's request to amend is denied at this time.

In connection with the Seventh Cause of Action, as just mentioned Plaintiff indicates that he can, "if required," amend the Complaint to clarify that he is seeking to impose *respondeat superior* liability against the City, to the extent that any individual RPD officers are found liable under the Sixth Cause of Action (assault and battery).  The Court finds that such an amendment is not necessary, since the Complaint already includes allegations of *respondeat superior* liability against the City as part of the Sixth Cause of Action. *See*, Compl. at ¶ ¶ 100-103.

---

[15] ECF No. 28 at p. 10.

CONCLUSION

City Defendants' Motion to Dismiss (ECF No. 7) is granted in part and denied in part for the reasons stated above. City Defendants' motion is denied as to the First and Sixth Causes of Action as set forth above, but is otherwise granted. The Second, Third, Fourth, Fifth and Seventh Causes of Action are dismissed as against the City Defendants. The First Cause of Action may proceed against the individual RPD officers only, while the Sixth Cause of Action may proceed against the individual RPD officers, and against the City on a *respondeat superior* theory. The Clerk of the Court is directed to terminate the City of Rochester Police Department as a party to this action. The remaining served City Defendants shall file and serve an Answer within fourteen days as required by Fed. R. Civ. P. 12(a)(4)(A).

SO ORDERED.

Dated:	Rochester, New York
	January  11, 2022

ENTER:

_____
CHARLES J. SIRAGUSA
United States District Judge